

September 23, 2024

<u>*Via* **ECF**</u>
The Honorable William F. Kuntz
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     <u>**United States v. Rushel Katanov,**</u>
        <u>**22-Cr-265 (WFK)**</u>

Dear Judge Kuntz:

  Rushel Katanov is scheduled to be sentenced by Your Honor on September 30, 2024. On June 3, 2023, pursuant to an agreement with the government, Mr. Katanov pleaded guilty before your Honor to the lesser included offense in Count 1, conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). The Probation Department estimates that Mr. Katanov's total offense level is 25, his criminal history category is II, and his resulting sentencing guideline range is 63-78 months. *See* Presentence Report (PSR) at ¶¶ 33, 38, 85. The government, abiding by the range stipulated to in the plea agreement, argues that the guideline range is 51-63 months. In addition, the government plans to ask the Court to apply a one-point global plea reduction, which would lower Mr. Katanov's guideline range 46-57 months. Regardless of the ultimate guideline calculation, however, the circumstances of this case are such that a sentence of time served plus mandated drug treatment would be sufficient but not greater than necessary to satisfy the aims of sentencing at 18 U.S.C. § 3553(a).

**<u>Personal History and Characteristics</u>**

  Rushel Katanov has been a drug addict for nearly 20 years. Not only that, he suffers from a series of mental illnesses that, in combination with his addiction, unquestionably contributed to his disastrous decision to sell drugs to undercover officers on 13 occasions between December 2020 and May 2021. After decades of incarcerating users of drugs with mental illnesses, we have, in recent years, begun to understand that prison is not the appropriate place for people like Mr. Katanov. Both Mr. Katanov, and the community more broadly, will benefit not from a prison sentence, but from an assurance that he will receive adequate and continuing drug treatment, which will

Miedel & Mysliwiec LLP
52 Duane Street, 7th Floor • New York, New York 10007 • (T) 212-616-3042 • (F) 800-507-8507 • www.fmamlaw.com

hopefully lead him to finally rid himself of the addictions that have cursed his life for so many years.

Rushel Katanov moved to New York from Uzbekistan when he was two years old. He was raised in an intact immigrant working class family. Both his parents worked all the time, which left Rushel and his siblings to essentially raise themselves. By high school, Rushel began using drugs and "acting out." PSR at ¶ 47. In retrospect, this probably reflected the emergence of Mr. Katanov's mental illnesses, which he appeared to self-medicate with street drugs. The drug usage led to increasing absences from school, and he was expelled by his high school after 9th grade. At their wits' ends, Mr. Katanov's parents enrolled him in an online high school in Florida, which he eventually completed. PSR at ¶ 76. Most of his free time, however, was spent on the streets, and his parents found him increasingly difficult to control. Since then, Mr. Katanov has sporadically worked, both in his parents' store and elsewhere. He received a certificate from a vocational school to be able to work in a pharmacy – which he did for a brief period. PSR at ¶ 76. For the most part, however, Rushel Katanov has been relying on his parents, living at home, using drugs, and has cycled through a series of drug treatment programs.

<u>Mental Illness</u>

---

[1] The defense is in possession of over 100 pages of Mr. Katanov's mental health records, which are available if requested by the Court.

[2] ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████

Drug Addiction

Rushel Katanov started using and abusing drugs at a very young age. The list of drugs he has used is long, but for much of his life opiates served as his primary source of self-medication. PSR at ¶ 62. After starting with marijuana at 13, he quickly moved to Xanax and Oxycodone. By age 16, he was using heroin.[3] By his 20s, he was using between 10 and 30 bags of heroin daily! In recent years, heroin became increasingly comingled with fentanyl and Mr. Katanov became a regular user of both drugs. This led to several overdoses, which fortunately were not fatal but did require him to have to be revived by Narcan. But Mr. Katanov saw many of his "friends" in the drug community die from overdoses. He has also tried, on numerous occasions, to defeat his drug addiction through treatment. He has attended rehab countless times at Arms Acres and other providers. He has tried methadone and suboxone treatment. He has been prescribed Vivitrol, which reduced his urges. But they came roaring back as soon as he discontinued the Vivitrol. Mr. Katanov's drug addiction has been a true battle, one that he has lost more often than he has won.

As the Court knows, Mr. Katanov relapsed multiple times while out on bail. Although he managed to stop using heroin, that drug was simply replaced by cocaine, amphetamines, and methamphetamines. PSR at ¶ 4. He was able to complete short term in patient detox programs, but immediately reverted back to drug usage. This has been a lifelong battle – and one that directly contributed to the conduct that resulted in his arrest in this case.

**The Circumstances of the Offense**

Mr. Katanov was arrested on June 22, 2022, because 18 months earlier – from December 2020 to May 2021 – he had sold narcotics, mostly heroin and fentanyl, to two undercover officers on thirteen occasions. The sales stopped in May 2021. The circumstances of the offense occurred as follows:

In December 2020, Rushel Katanov was heavily using heroin and fentanyl – often up to thirty bags a day. His primary dealer was his subsequent co-defendant, Wesner Frederique. One day, Mr. Katanov was approached by someone he believed to be a fellow addict – someone who was looking to buy heroin. Mr. Katanov agreed to purchase some baggies for this person from Mr. Frederique in exchange for a free bag or two for himself. This individual, pretending to be an addict, was the first undercover officer. As is reflected in the PSR, the first six sales between Mr. Katanov and the undercover officer were small, personal use, amounts – between half a gram and three and a half grams. PSR at ¶ 7. In these instances, Mr. Katanov received some drugs for himself, and perhaps a small amount of cash.

---

[3] Although Mr. Katanov told the Probation Department that his heroin addiction began in his 20s, drug treatment records in the possession of the defense confirm that his usage of heroin began much earlier. These 200 pages or more of treatment records from Arms Acres and Corner Stone Rehabilitation chronicle his journey through drug rehab centers over the years. They are available to the Court upon request.

This changed in February 2021, when the first undercover office introduced Mr. Katanov to a second undercover officer. This person pretended to be a bigger middleman and was not looking for personal use amounts. He hoped to buy up to 50 grams of heroin at a time. Mr. Katanov – who was, as noted, hardly thinking clearly given his own consumption of 30 bags of heroin a day[4] – saw an opportunity to make some money to spend on more drugs. He was not working, had no steady income, and was spending every cent he had on his addiction. This was a chance to make money to buy even more heroin. He began obtaining larger amounts from Mr. Frederique, and in turn selling them to the second undercover officer. Between February 2021 and May 2021, on five occasions, he sold between 19 and 25 grams at a time to the undercover officer. *See* PSR at ¶ 7.

In May 2021, these sales with Mr. Katanov stopped when the undercover officers started buying directly from Wesner Frederique and a fellow dealer, Steven Cohen, who both worked for the primary boss, Jared Guerrero. *See* PSR at ¶ 8. Mr. Katanov went back to simply using.

Rushel Katanov was a drug addict who consumed vast amounts of heroin and fentanyl each day. He was not a drug dealer, other than when the opportunity in the form of the undercover officers presented itself to him. To be sure, video and audio recordings of the later transactions between him and the second undercover officer show him talking big – about cartels, and Russian mob connections, and the like. It was all talk. The notion that Rushel Katanov had such connections was ludicrous. Rather, he saw a chance to make some money to buy more drugs, but drug dealing was not his business. He had no other customers, in part because he was both too addled by drugs and mentally unstable to be successful. In sum, it is true that Mr. Katanov engaged in thirteen drug transactions between December 2020 and May 2021, selling between ½ gram and 25 grams of heroin/fentanyl mixtures. But it is also true that he was doing so entirely to support his own devastating addiction. Generally speaking, the federal government is not in the business of prosecuting drug users. The fact that Mr. Katanov was caught up in this larger distribution ring is sad for him, but I respectfully urge the Court to carefully consider his role, his participation, and his conduct as compared to so many real drug distributers prosecuted in this court house in determining that the four months Mr. Katanov has spent in jail are sufficient.

**Mr. Katanov's Experience of Incarceration**

Mr. Katanov spent approximately five weeks after his arrest in June 2022 at the MDC, before being released to in-patient treatment. He was then re-incarcerated on July 1, 2024 because of an arrest for a misdemeanor in Queens (that case will be dismissed on October 8, 2024), and has remained at the MDC since then. The Court is, of course, intimately familiar with the horrific conditions of confinement at the MDC and positions taken by courts in this district and the Southern District in response to those conditions. *See e.g. United States v. Colucci*, 2024 WL 3643857 (E.D.N.Y. Aug. 5, 2024); *United States v. Chavez*, 710 F. Supp. 3d 227 (S.D.N.Y. 2024).

---

[4] Indeed, the video recordings of these transactions show that Mr. Katanov was clearly under the influence of powerful drugs at the time.

Fortunately, Mr. Katanov will have spent only about four months at the MDC – but he has certainly endured many of the same deprivations the Court has heard about in other cases. Constant lockdowns, forcing him to remain locked in his cell for days at a time, lack of access to exercise and commissary. Not to mention the relentless fear of being physically harmed due to the dramatic increase in physical violence at the facility. Thus, even though Mr. Katanov's time at the MDC has been fairly limited, I respectfully urge the Court to take into account the conditions of confinement he has been forced to endure – particularly difficult for someone suffering from schizophrenia and anxiety – and to determine that they constituted a mitigating factor under 18 U.S.C. § 3553(a).

## Conclusion

Rushel Katanov's case should not be a criminal justice problem. It is a medical problem. He suffers from debilitating mental illness and a 20-year life-sapping drug addiction. He needs help, not punishment in prison. The question is – what can be done? It is true that Mr. Katanov has been treated for his drug addiction many times – without apparent success. It is also true that threats of punishment – violations of supervised release – go only so far when it comes to a person with mental illness and addiction disorders so powerful that most of us cannot imagine, let alone relate.

Still, we cannot give up on Mr. Katanov. There is only one path forward, and that path is drug treatment. It may not work the first time, or even the first few times. But we can only hope that eventually it will take – that the combination of Mr. Katanov's increased maturity, the support of his family, the support of the Court and the Department of Probation, and, most importantly, his own desire to stay alive and to live a meaningful and productive life will eventually win out. Throwing him in prison will serve no one.

For all of these reasons, I respectfully urge the Court to impose a sentence of time served followed by drug treatment. Under the special circumstances of this case, such a sentence would be sufficient but not greater than necessary as required by 18 U.S.C. § 3553(a).

Respectfully,

/s/

Florian Miedel
*Attorney for Rushel Katanov*

Cc:     Government Attorneys
        Probation Officer

Miedel & Mysliwiec LLP
52 Duane Street, 7th Floor • New York, New York 10007 • (T) 212-616-3042 • (F) 800-507-8507 • www.fmamlaw.com