

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 *Cadman Plaza East*
*Brooklyn, New York 11201*

LRO
F.#:2021R00345

September 26, 2024

By E-mail and ECF

The Honorable William F. Kuntz II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Rushel Katanov
                 Criminal Docket No. 22-265 (WFK)

Dear Judge Kuntz:

      The government respectfully submits this letter in advance of defendant Rushel Katanov's sentencing, scheduled for September 30, 2024. On June 9, 2023, the defendant pled guilty to a lesser-included offense of Count One of the above-captioned indictment, charging him with conspiracy to distribute and possess with intent to distribute heroin, fentanyl, and a fentanyl analogue, para-fluorofentanyl. (Presentence Investigation Report ("PSR") ¶ 1). For the following reasons, the government respectfully submits that a sentence of 48 months' imprisonment, which represents a sentence below the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range, is appropriate.

I.      Background

      As set forth in the PSR, between December 2020 and May 2021, undercover law enforcement officers conducted 13 controlled buys of narcotics—including heroin, fentanyl and fentanyl analogues—from the defendant. (PSR ¶ 7). Prior to several of those purchases, the defendant was observed meeting with a "supplier," co-defendant Wesner Frederique. In the months that followed, law enforcement conducted additional controlled buys through co-defendants Frederique, Steven Cohen and Jared Guerrero. On each occasion, Guerrero would instruct the undercover officer to meet one of his "runners"—Frederique or Cohen—who would meet the undercover officer and provide narcotics in exchange for cash. In total, the defendants sold more than more than 100 grams of heroin, more than 400 grams of fentanyl and more than 100 grams of fentanyl analogues to undercover officers. As noted in the PSR, the defendant is personally responsible for selling more than 130 grams of narcotics, including heroin, cocaine, tramadol, fentanyl and fentanyl analogues.

The defendant was arrested on June 22, 2022 and initially detained. He was charged—along with co-defendants Guerrero, Frederique and Cohen—with narcotics conspiracy, in violation of 21 U.S.C. §§ 841 and 846 (Count One), and distribution and possession with intent to distribute narcotics, in violation of 21 U.S.C. § 841(b)(1)(A) and (b)(1)(B) (Count Two). See ECF No. 1. On July 29, 2022, the defendant was released on bond and mandated to participate in residential treatment services. See ECF No. 40.[1] On June 9, 2023, the defendant pled guilty to a lesser-included offense of Count One, the narcotics conspiracy. On October 26, 2023, Magistrate Judge Sanket J. Bulsara granted a modification request to include the defendant's participation in the Pretrial Opportunity Program ("POP"). The defendant's participation in POP was unsuccessful, and on July 1, 2024, the defendant was remanded following his arrest for menacing, assault and harassment. He remains detained pending sentencing.

II.      Guidelines Calculation and Statutory Framework

The government agrees with the Guidelines calculation as set forth in the PSR:

| | |
|---|---:|
| Base Offense Level (U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(6))[2] | 28 |
| Less: Global Resolution (U.S.S.G. §§ 5K2.0))[3] | -1 |
| Less: Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a) and (b)) | -3 |
| Total: | 24 |

The defendant is in Criminal History Category II. (PSR ¶ 38). Accordingly, his Guidelines range is 57 to 71 months' imprisonment.

III.     The Appropriate Sentence

   A.     Applicable Law

In United States v. Booker, 543 U.S. 220, 245 (2005), the Supreme Court held that the Guidelines are advisory and not mandatory. The Court made clear that district courts are

---

[1]     As discussed below and in the PSR (PSR ¶¶ 3-5), the defendant was the subject of multiple bail violation memoranda regarding, among other things, drug use, failure to comply with location monitoring, and a June 26, 2024 arrest.

[2]     The parties' plea agreement calculated a base offense level of 26, rather than the correct base offense level of 28. (PSR ¶¶ 10, 11, 24). However, as set forth below, the government's recommendation reflects a sentence within the lower sentencing range contemplated by the parties' agreement (46 to 57 months' imprisonment).

[3]     As set forth in the PSR (PSR ¶ 98), the government recommends an additional one-level reduction because the defendant entered a guilty plea prior to June 9, 2023.

still "require[d] . . . to consider Guidelines ranges" in determining sentences, but they may also tailor the sentence in light of other statutory concerns. Booker, 543 U.S. at 220; see 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to consider them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005). Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." Id. at 113.

The Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the sentencing court] may not presume that the Guidelines range is reasonable. [The sentencing court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

Section 3553(a) requires a court to consider a number of factors in imposing sentence, including the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, to promote respect for the law, and to provide a just punishment for the violation; and the need for the sentence to afford adequate deterrence to criminal conduct; to protect the public from further crimes or violation of the defendant; and to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner. The court must also consider the kinds of sentences available, the applicable sentencing guideline and pertinent policy statements, and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(1)-(6).

B. Discussion

Despite various opportunities to address his issues relating to drug abuse and mental illness, for years, the defendant has instead pursued a course of escalating criminality. As detailed below, while the Court should consider the mitigating circumstances detailed in the PSR and in the defendant's submission, a term of incarceration is nonetheless appropriate in order to protect the public, promote respect for the law, and deter the defendant from committing future crimes.

First, there is no doubt that this is a serious crime involving dangerous and deadly narcotics. Fentanyl is "a synthetic opioid 50-100 times more potent than morphine" and "fentanyl analogs" were "detected increasingly in overdose deaths." See generally "Deaths Involving Fentanyl, Fentanyl Analogs, and U-47700 – 10 States, July-December 2016," CDC, Nov. 3, 2017, available at https://www.cdc.gov/mmwr/volumes/66/wr/mm6643e1.htm (describing fentanyl as "a synthetic opioid 50-100 times more potent than morphine" and noting that "fentanyl analogs" were "detected increasingly in overdose deaths") (last accessed

September 26, 2024). In a review of certain overdose deaths, fentanyl was found to be involved in more than half, and the CDC has noted that illicitly manufactured fentanyl is a key factor driving opioid overdose deaths. Id. During his months-long drug trafficking spree, the defendant distributed substantial quantities of heroin, fentanyl and fentanyl analogues into the community. The dangers of selling fentanyl (including to "someone he believed to be a fellow addict," see ECF No. 166 ("Def. Ltr.") at 3) cannot be understated—and are highlighted by the defendant's own personal experience.

While the defendant was not a leader or organizer in the scheme, he nonetheless served a vital role. The defendant personally arranged and participated in thirteen narcotics transactions with two undercover officers, selling more than 25 grams of fentanyl in a single transaction. In total, the defendant is personally responsible for selling more than 130 grams of narcotics—and text messages between the defendant and an undercover officer confirm that the defendant made efforts to initiate additional transactions, undermining his argument that his drug trafficking activity "stopped in May 2021." Def. Ltr. at 3.

The defendant's personal history and characteristics consist of both aggravating and mitigating factors. As detailed in the PSR, the defendant's criminal history dates back more than a decade. He has accumulated three criminal convictions, including for disorderly conduct and petit larceny, in addition to at least three other arrests—including a knifepoint assault case that remains pending in Queens County. (PSR ¶¶ 35-42). Since his arrest in the instant case, the defendant has repeatedly violated the conditions of his pretrial release, including by repeatedly testing positive for narcotics, such as cocaine, amphetamines and methamphetamines (PSR ¶¶ 3, 4); not attending substance abuse treatment (PSR ¶¶ 3, 5); leaving his residence without approval while on home detention, including more than 21 times between April 9 and June 27, 2024 (PSR ¶ 5); failing to comply with directives by Pretrial Services (PSR ¶ 5); and getting arrested in connection with an altercation during which the defendant menaced others with a knife (PSR ¶ 5). As a result, on July 1, 2024, the defendant was remanded.

As noted in the PSR and highlighted in the defendant's submission, the defendant has a long and well-documented history of drug abuse and mental illness, which the government has accounted for in its sentencing recommendation. The government does not dispute that those factors may have contributed to the defendant's criminal conduct, or that substance abuse and mental health treatment are warranted. However, the defendant has also been given multiple opportunities to engage in intensive treatment programs—most recently, through the POP program administered by the Court and Pretrial Services—but each time, the defendant has failed to make meaningful use of the help and resources presented to him, and instead reverted to increasingly serious criminal behavior. The defendant's criminal history demonstrates his willingness to repeatedly flout the law—suggesting that specific deterrence is necessary—and also militates in favor of an incarceratory sentence in order to protect the public from further crimes.

Finally, a sentence of 48 months is appropriate to avoid unwarranted sentencing disparities with others convicted of similar conduct. See 18 U.S.C. § 3553(a)(6). According to data from the United States Sentencing Commission, in cases such as this one (i.e., involving application of U.S.S.G. § 2D1.1 for quantities of fentanyl, a Guidelines offense level of 24, and a

criminal history category of II), from 2019 to 2023, the average length of imprisonment imposed was 43 months, with a median sentence of 48 months.  See Judiciary Sentencing Information (JSIN), United States Sentencing Commission, https://jsin.ussc.gov.  Substituting the adjusted offense level of 22 contemplated by the parties' plea agreement, the average length of imprisonment imposed was 47 months, with a median sentence of 46 months.  Id.  Thus, a term of 48 months in this case is sufficient but not greater than necessary to reflect the goals of sentencing.

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a term of incarceration of 48 months.

Respectfully submitted,

BREON PEACE
United States Attorney

By: _____/s/_____
Lindsey R. Oken
Assistant U.S. Attorney
(718) 254-6516

cc: Clerk of Court (WFK) (by ECF)
Counsel of Record, Esq.