UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,                                    :
                                                             :        **MEMORANDUM & ORDER**
                          v.                                 :        22-CR-265 (WFK)
                                                             :
RUSHEL KATANOV,                                              :
                                                             :
                          Defendant.                         :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**:

On June 9, 2023, Defendant pled guilty to a lesser-included offense of Count One of a two-count Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Indictment ¶ 1, ECF No. 1; Plea Agreement ¶ 1, ECF No. 83. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 48 months of imprisonment followed by three years of supervised release with both standard and special conditions. Defendant is also required to pay a mandatory special assessment of $100.00.

## I. Background

As part of an investigation into a series of drug overdoses in 2020, including a fatal overdose in Queens, New York, the United States of America ("the Government") uncovered Defendant and his co-defendants were trafficking significant quantities of deadly narcotics, including heroin, fentanyl, and fentanyl analogues. Presentence Investigation Report ("PSR") ¶ 6, ECF No. 165.

As part of the investigation into the conspiracy, law enforcement conducted more than 20 controlled purchases with Defendant and his co-defendants, during which they collectively sold to undercover law enforcement officers more than 100 grams of heroin, more than 400 grams of fentanyl, and more than 100 grams of fentanyl analogues. *Id.* ¶ 9. Because Defendant and his co-defendants supplied customers beyond undercover officers, these are conservative figures for the conspiracy's total distribution. *Id.* ¶ 9-10. The Government was unable to determine

whether the narcotics supplied by Defendant and his co-defendants were given to individuals who suffered overdoses. *Id.* ¶ 9. Between December 2020 and May 2021, undercover law enforcement agents conducted 13 controlled purchases of narcotics from Defendant specifically, which involved more than 130 total grams of narcotics including fentanyl, fentanyl analogues, heroin, tramadol, and cocaine across the transactions. *Id.* ¶¶ 7, 9-10.

On June 9, 2022, a grand jury returned an Indictment charging Defendant and others with one count of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(vi), and 841(b)(1)(B)(i), and one count of Distribution of and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(vi), and 841(b)(1)(B)(i). Indictment, ECF No. 1. The Indictment also included a forfeiture allegation. *Id.* ¶¶ 3-4.

Law enforcement agents arrested Defendant on June 22, 2022 without incident. *Id.* ¶ 7. During post-arrest statements, Defendant admitted to his involvement in the instant offense. PSR ¶ 10.

On June 9, 2023, Defendant pled guilty to a lesser-included offense of Count One charging him with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Indictment ¶ 1; Plea Agreement ¶ 1, ECF No. 83. As part of his plea agreement, Defendant agreed not appeal or otherwise challenge his conviction or sentence if the Court imposes a term of imprisonment at or below 63 months. Plea Agreement ¶ 4. Additionally, Defendant agreed not to challenge the drug type and quantity set forth in the lab reports. *Id.* ¶ 2.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Family and Personal Background

Defendant was born on February 22, 1991, in Fergana, Uzbekistan to Vladimir Katanov and Natalya Petrova. PSR ¶ 44. Defendant has two siblings. *Id.* ¶ 46. Defendant moved with his family to Queens, New York when he was two years old. *Id.* ¶ 48. Defendant was raised in

3

below-average economic circumstances and reported he and his brother largely raised themselves as their parents were constantly working. *Id.* ¶ 47. Defendant reported he engaged in fights at a young age and skipped classes, leading to his expulsion from school. *Id.* Defendant faced no abuse within his family, but stated he felt neglected by his parents.

Defendant maintains a good relationship with his parents and his brother, all of whom are aware of his instant arrest and remain supportive. *Id.* ¶ 44. While Defendant reported having a good relationship with his sister, he noted they are not close. *Id.* ¶ 46. She is not fully supportive of Defendant. *Id.*

Defendant is not married and does not have any children. *Id.* ¶ 49.

        2.    Educational and Employment History

Defendant attended 9th grade at Forest Hills High School in Forest Hills, New York in 2005. *Id.* ¶ 76. Defendant stated he engaged in fights during high school and started using drugs. *Id.* He stated he left Forest Hills High School because of his drug use and he stopped attending classes to start working. *Id.* Defendant transferred to Southeastern High School in Bradenton, Florida and took online courses from 2006 until 2010. *Id.*

Defendant reported attending Manhattan Institute in New York, New York from 2011 until 2013 to earn his pharmacy technician certificate. *Id.* ¶ 75. Defendant also stated he attended another institution from 2019 until 2020 to receive a real estate certificate. *Id.* ¶ 74. Although Defendant received his real estate certificate, he reported never completing the test required to become a certified realtor. *Id.* ¶ 74.

Defendant reported working as a bookkeeper at his father's store, Art Deco Pawn Broker, in New York, New York. *Id.* ¶ 79. Defendant worked there on and off from 2006 until his remand into federal custody for the instant offense. *Id.* Defendant also worked various part-time

4

jobs, including as a dental assistant, construction worker, waiter, pawn shop employee, and deli employee. *Id.*

        3.      Prior Convictions

Defendant has three prior criminal convictions related to theft incidents, including one violation for Disorderly Conduct and two misdemeanors for Petit Larceny. *Id.* ¶¶ 35-37. Currently pending are Defendant's state misdemeanor charges for Assault in the Third Degree with Intent to Cause Physical Injury and Menacing in the Second Degree with a Weapon. *Id.* ¶ 40. These charges stem from Defendant's arrest on June 26, 2024—while out on bail for the instant offense—after he allegedly threatened an individual in a restaurant with a knife. *Id.* Following this arrest, this Court revoked Defendant's bail and ordered him remanded into federal custody. July 1, 2024 Minute Entry.[1]

        4.      Physical and Mental Health

Defendant has lingering physical challenges from prior injuries, including an unattached rotator cuff and a previously fractured jaw socket. PSR ¶¶ 53-56. In terms of mental health, Defendant was diagnosed with severe mental health disorders as a teenager. *Id.* ¶ 57. These mental health ailments have negatively affected Defendant in significant ways, including through devastating cycles of drug addiction, overdoses, and suicide attempts. *Id.* ¶¶ 57-61; *see also* Def. Mem. at 2. Defendant continues to struggle with his mental health, an issue addressed by the parties in their sentencing submissions and taken into account by the Court.

        5.      Substance Abuse

Defendant has been a drug addict for almost 20 years, according to defense counsel. Def. Mem. at 1. Probation states Defendant started using marijuana at age 14. PSR ¶ 63. By age 16,

---

[1] Defense counsel claims Defendant's pending state court case will be dismissed on October 8, 2024. Def. Mem. at 4.

Defendant was abusing Xanax and Percocet. *Id.* ¶¶ 64-65. In his 20s, Defendant started using significant amounts of heroin. *Id.* ¶ 68. Defense counsel states Defendant used between 10 and 30 bags of heroin each day. Def. Mem. at 3. Defendant occasionally used other drugs including MDMA, cocaine, cocaine base, ketamine, xylazine, GHB, and crystal methamphetamine. PSR ¶ 68. In recent years, Defendant's heroin has been mixed with fentanyl, resulting in approximately 12 overdoses, which, while nonfatal, required Narcan for Defendant's revival. *Id.* ¶ 69; Def. Mem. at 3. Defendant has participated in numerous inpatient and outpatient substance treatment programs, although he has struggled with relapse challenges after each one. PSR ¶ 70-73; Def. Mem. at 3.

> 6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved selling fentanyl, fentanyl analogues, heroin, and other drugs as part of a drug distribution ring. *See supra* Part I. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

**C.  The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant pled guilty to a lesser-included offense of Count One of the Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  This offense carries a maximum term of imprisonment of 20 years and no minimum term of imprisonment.  21 U.S.C. § 846 and 841(b)(1)(C).  For supervised release, Defendant faces a minimum term of three years and a maximum term of life.  21 U.S.C. § 841(b)(1)(C).  If a condition of release is violated, Defendant may be sentenced to up to two years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision.  18 U.S.C. § 3583(e).  Defendant is eligible for a term of probation of not less than one nor more than five years.  18 U.S.C. § 3561(c)(1).  Unless extraordinary circumstances exist, one of the following must be imposed as a condition of probation:  a fine, restitution, or community service.  18 U.S.C. § 3563(a)(2).  Defendant faces a maximum fine in the amount of $1,000,000.00, 21 U.S.C. § 841(b)(1)(C), as well as a mandatory special assessment of $100.00 per count, 18 U.S.C. § 3013.

**D.  The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines."  *Id.* § 3553(a)(4)(A).

The applicable Guidelines provision for violations of 21 U.S.C. § 846 is U.S.S.G. §2D1.1.  Pursuant to U.S.S.G. §2D1.1(a)(5), the base offense level is determined by the Drug Quantity Table in U.S.S.G. §2D1.1(c).  Application Note A to the Drug Quantity Table in

7

U.S.S.G. §2D1.1 states "[i]f a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level." The majority of Defendant's transactions involved a mixture of substances. PSR ¶ 10. Because the substances in these mixtures with the highest offense levels are fentanyl and fentanyl analogue, Defendant is responsible for distributing 78.568 grams of fentanyl and 54.359 grams of fentanyl analogue. *Id.* As explained in Note 8(B) to U.S.S.G. §2D1.1, because the offense involved multiple controlled substances, each must be converted to its Converted Drug Weight. Pursuant to the Drug Conversion Tables in Note 8(D) to U.S.S.G. §2D1.1, 78.568 grams of fentanyl are equivalent to 196.42 kilograms of Converted Drug Weight and 54.359 grams of fentanyl analogue are equivalent to 543.59 kilograms of Converted Drug Weight. Therefore, Defendant is responsible for a total of 740.01 kilograms of Converted Drug Weight. Pursuant to U.S.S.G. §2D1.1(a)(5) and (c)(6), Defendant's total Converted Drug Weight is at least 700 kilograms but less than 1,000 kilograms, which results in a base offense level of 28. *See* PSR ¶ 24.

Defendant does not qualify for the "safety-valve" provision of U.S.S.G. §2D1.1(b)(18) because, according to Probation, he has not provided the Government with a complete and truthful account of his participation in the instant offense. *Id.* ¶ 25.

Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. This brings Defendant's total adjusted offense level to 25. Probation agrees with this calculation. PSR ¶ 33.

The Government largely agrees with Probation, but argues for an additional one-level global plea reduction, pursuant to U.S.S.G. §5K2.0, because Defendant and his co-defendants pled guilty by June 9, 2023. Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF

No. 167; *see also* Plea Agreement ¶ 8.  Probation construes this global plea reduction as a downward variance.  *See* discussion *infra* Part III(E).  The Government calculates Defendant's total offense level is 24.  Gov't Mem. at 2.

In its sentencing submission, defense counsel does not state its positions with respect to Defendant's sentencing Guidelines because "[r]egardless of the ultimate guideline calculation . . . the circumstances of this case are such that a sentence of time served plus mandated drug treatment would be sufficient but not greater than necessary to satisfy the aims of sentencing at 18 U.S.C. § 3553(a)."  Defense Sentencing Memorandum ("Def. Mem") at 1, ECF No. 166.  As part of his plea agreement, Defendant stipulated to a base offense level of 26 and a total adjusted offense level of 22.  Plea Agreement ¶ 2.

As noted previously, Defendant has three prior convictions.  *See supra* Part III(A)(3).  Defendant's prior convictions result in a criminal history score of two.  U.S.S.G. §§4A1.1, 4A1.2; PSR ¶ 38.  This yields a criminal history category of II.  U.S.S.G. §5A.

According to Probation's calculations, a total adjusted offense level of 25 and a criminal history category of II result in a Guidelines imprisonment range of between 63 and 78 months.  PSR ¶ 85.  According to the Government's calculations, a total adjusted offense level of 24 and a criminal history category of II result in a Guidelines imprisonment range of between 57 and 71 months.  Gov't Mem. at 2.  While defense counsel does not state its position on Defendant's Guidelines range, *see generally* Def. Mem., Defendant stipulated, as part of his plea agreement, to a total adjusted offense level of 22, Plea Agreement ¶ 2.  A total adjusted offense level of 22, coupled with a criminal history category of II, results in a Guidelines imprisonment range of between 46 and 57 months.

The Court agrees with the Guidelines calculations of the Government, as it correctly calculates the base offense levels for the drug quantities and type and appropriately includes the additional one-point global plea reduction.

That said, the parties' recommendations as to an appropriate sentence vary.

Probation recommends a sentence of 57 months of custody followed by three years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 165-1. Probation also recommends payment of the $100.00 special assessment. *Id.* Probation does not recommend the Court impose a fine because Defendant appears unable to pay. *Id.* at 3.

Probation states if the Court applies a variance for the one-level global plea reduction, Defendant's applicable Guidelines range is 57 to 71 months of custody. *Id.* Probation argues a custodial sentence at the bottom of this Guidelines range—57 months—is warranted because of Defendant's distribution of fentanyl and fentanyl analogues, among other drugs, as part of a drug trafficking organization. *Id.* Probation recognizes Defendant's mental health challenges and recommends drug treatment and abstinence from prescription medication. *Id.* Probation also recommends the statutory minimum term for supervised release—three years—because Defendant has not satisfied the "safety-valve" provision. *Id.*

Defense counsel requests a sentence of time-served plus mandated drug treatment. Def. Mem. at 1. Defense counsel argues the four months Defendant has already spent in jail for the instant offense are sufficient because, according to defense counsel, Defendant had a limited role in the drug distribution ring and his serious mental health problems and drug addiction are medical problems, not criminal justice problems. *Id.* at 4-5.

Defense counsel states Defendant's nearly 20-year drug addiction began as a form of self-medication in high school to address his emerging mental illnesses. *Id.* at 1. Defendant's

serious mental health diagnoses led to destructive cycles of drug addiction, to the point where Defendant was, according to defense counsel, using between 10 and 20 bags of heroin each day. *Id.* at 3. In recent years, Defendant's heroin was increasingly mingled with fentanyl, leading to Defendant overdosing and being revived with Narcan numerous times. *Id.* Defendant tried substance abuse treatments as well as short-term detox programs, but reverted back to drug use, including multiple times while out on bail. *Id.*

Defense counsel does not dispute Defendant's 13 drug transactions for the instant offense; instead, he argues Defendant "was doing so entirely to support his own devastating addiction." *Id.* According to defense counsel, Defendant "was caught up in this larger distribution ring" and argues the Court should consider Defendant's role "as compared to so many real drug distributors prosecuted in this court house." *Id.*

Lastly, defense counsel notes the horrific conditions of confinement at the Metropolitan Detention Center ("MDC"), where Defendant has spent approximately four months in total. *Id.* Defense counsel argues, although Defendant's "time at the MDC has been fairly limited," the Court should consider as a mitigating factor that the MDC's conditions have been "particularly difficult for someone suffering from" severe mental health problems. *Id.* at 5. Defense argues Defendant's "debilitating mental illness and a 20-year life-sapping drug addiction" requires medical help, "not punishment in prison" which "will serve no one." *Id.*

The Government recommends a below-Guidelines sentence of 48 months. Gov't Mem. at 1, 5. While the Government's recommended sentence is below the Guidelines range, it is within the Guidelines range originally contemplated in the plea agreement, to which Defendant stipulated. *Id.* at 2 n.2; *see also* Plea Agreement ¶ 2. In arguing 48 months of custody is

warranted, the Government argues the Court should consider (1) Defendant's "course of escalating criminality" and (2) his drug abuse and mental illness.  Gov't Mem. at 3.

The Government emphasizes the seriousness of Defendant's offenses involving dangerous narcotics, specifically fentanyl and fentanyl analogues.  *Id.* at 3.  The Government recognizes Defendant was not a leader or organizer of the drug conspiracy.  *Id.* at 4.  Nonetheless, the Government argues he played a "vital role" by "personally arrang[ing] and participat[ing] in thirteen narcotics transactions with two undercover officers, selling more than 25 grams of fentanyl in a single transaction" and over 130 grams of narcotics in total.  *Id.*

The Government states its sentencing recommendation accounts for Defendant's "long and well-documented history of drug abuse and mental illness."  *Id.*  The Government argues, although those factors may have contributed to Defendant's criminal conduct, Defendant "has also been given multiple opportunities to engage in intensive treatment," including during pretrial release, but he "has failed to make meaningful use of the help and resources presented to him, and instead reverted to increasingly serious criminal behavior."  *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E.  Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission."  18 U.S.C. § 3553(a)(5).

As discussed above, the Government states Defendant is eligible for a one-level global plea reduction because he and his co-defendants pled guilty by June 9, 2023, as specified in the plea agreement.  Gov't Mem. at 2; Plea Agreement ¶ 8.  Probation construes this reduction as a variance pursuant to the Policy Statement in U.S.S.G. §5K2.0.  PSR ¶ 98.

The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

## F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Government argues a term of 48 months' imprisonment "is appropriate to avoid unwarranted sentencing disparities with others convicted of similar conduct." Gov't Mem. at 4-5. Citing data from the United States Sentencing Commission, the Government states defendants with similar fentanyl quantities, offense levels of 24, and criminal history categories of II received sentences of 43 months' imprisonment on average and 48 months' imprisonment at the median. *Id.* at 4-5. The Government also notes the average and median change only slightly for defendants with an offense level of 22, as contemplated in the plea agreement. *Id.* at 5. Specifically, such defendants received 47 months' imprisonment on average and 46 months at the median. *Id.* In reaching its decision, the Court considers the statistics raised by the Government and also considers Defendant in relation to his co-defendants and other members of the drug distribution ring.

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

## G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This is not applicable in Defendant's case.

13

## IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 48 months of imprisonment to be followed by three years of supervised release with both standard and special conditions.  The Court also orders a $100.00 mandatory special assessment.  This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2).  The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 165, barring any errors contained therein, to the extent those findings are not inconsistent with this opinion.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2024
Brooklyn, New York

14